UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CHARLES F. BARRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A.,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Charles F. Barrett, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Bank of America Corporation and Bank of America, N.A. (collectively, "Bank of America" or "Defendants") and alleges as follows:

**INTRODUCTION**

1. Credit cards are among Bank of America's many financial products.

2. Credit cards are only to be issued to customers who apply for them. Yet for years, Bank of America employees, desperate to reach impossible sales goals set by the company, regularly completed applications for and issued credit cards to consumers who did not want them and never applied for them.

3. Bank of America was able to earn fees from these unwanted credit card accounts, while the customers whose identities were stolen by Bank of America's employees were left with black marks on their credit reports.

4. Plaintiff brings this action to hold Bank of America accountable, to force it to stop engaging in this unlawful conduct, and to recover the damages suffered by himself and all others similarly situated.

1

## PARTIES

5. Plaintiff Charles F. Barrett is a citizen and resident of Tennessee. He is domiciled in Nashville, Tenneessee.

6. Defendant Bank of America Corporation is, and at all relevant times was, a Delaware corporation with its principal place of business in Charlotte, North Carolina.

7. Defendant Bank of America, N.A. is, and at all relevant times was, organized as a national banking association under the laws of the United States. It has its headquarters and principal place of business in Charlotte, North Carolina. Bank of America, N.A., is the primary bank subsidiary of Bank of America Corporation.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") because (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse as members of the proposed class, including Plaintiff, are citizens of a state different from Defendants' home states; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Although the damages to each class member may be small, given the large number of affected Bank of America customers, their aggregate damages exceed the jurisdictional threshold.

9. This Court has personal jurisdiction over Defendants because they engaged in substantial business activities in Tennessee, purposefully directed their actions towards Tennessee, and have the requisite minimum contacts with Tennessee to constitutionally permit this Court to exercise jurisdiction.

10. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the events giving rise to this claim occurred here and because Defendants are subject to this Court's personal jurisdiction with respect to the claims advanced in this matter.

## FACTUAL ALLEGATIONS

**A. Bank of America.**

11. Bank of America operates in all 50 states and the District of Columbia. In September 2022, Bank of America, N.A. had over $3.1 trillion in total assets.

12. Bank of America offers an array of financial products and services to consumers, including credit cards.

13. Until January 1, 2023, Bank of America formally evaluated its employees' overall performance and incentive compensation by considering, among other factors, the number of new products or services that employees had sold to Bank of America customers.

14. Pressured to increase sales in order to keep their jobs or earn incentive bonuses, Bank of America's employees submitted applications for and issued credit cards without consumers' knowledge or consent.

15. When a consumer applies for a credit card, Bank of America obtains consumer reports (i.e., credit reports) on the applicant. When a potential lender obtains a credit report for the purpose of determining a consumer's creditworthiness, this activity is noted on future credit reports and negatively affects a consumer's credit rating (i.e., the credit score).

16. During the process of applying for credit cards without consumers' knowledge or consent, Bank of America would sometimes use or obtain consumer reports. Bank of America had no permissible purpose for obtaining these reports. Obtaining these reports had a negative impact on the consumers whose reports were obtained.

17. Bank of America benefitted from these accounts created without consumers' knowledge or consent because, among other things, Bank of America collected fees on those accounts.

18. Bank of America's conduct was investigated by the Consumer Financial Protection Bureau ("CFPB"), which determined that this conduct violated Truth in Lending Act, the Fair Credit Reporting Act, and the Consumer Financial Protection Act. On July 10, 2023, Bank of America settled with the CFPB and agreed to pay a civil penalty of $30 million and to provide redress to affected customers.[1]

19. Although Bank of America contends that it no longer imposes sales goals on the employees primarily responsible for consumer credit card accounts, this addresses only one cause of the issuance of credit cards without consumers' knowledge or consent. Moreover, the elimination of sales goals for purposes of formal performance evaluations and bonus eligibility does not necessarily mean that Bank of America does not consider employees' sales volume when making employment decisions.

**B. Consumers are harmed by Bank of America's actions.**

20. Bank of America's actions have harmed impacted consumers. This harm includes being charged fees by Bank of America on the credit cards, being put into collections for failure to pay fees accruing without customers' knowledge, losing control over their personal identifying information, spending time and effort to investigate the facts and seeking to close unwanted

---

[1] The consent order expressly recognizes that private actions based on the facts alleged in the order may be brought against Bank of America. *See* Consent Order, *In re Bank of America, N.A.*, CFPB No. 2023-CFPB-0007, at 5, 21–22 (July 11, 2023), https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_bank-of-america_2023-CFPB-0007_01_2023-07.pdf.

accounts, and having to more carefully monitor their credit going forward, including through costly identity theft protection services.

21. Consumers' credit ratings are also negatively affected when Bank of America pulls their credit reports as well as if consumers incur fees or other charges on the accounts opened without their knowledge or consent. As a result of lowered credit ratings, consumers face greater difficulty in finding jobs and obtaining credit, including car loans and mortgages.

22. Although purportedly the unwanted credit card accounts constituted a small percentage of Bank of America new accounts, the size of Bank of America means that a small percentage is still a large number of accounts in absolute terms.

C. **Plaintiff's Experience**

23. On March 23, 2022, Plaintiff took a flight on Spirit Airlines. Plaintiff did not complete an application for a credit card at that time.

24. In June 2023, Plaintiff received a statement from Bank of America by mail. This was the first statement he had ever received from Bank of America.

25. The statement was addressed to Plaintiff and purported to indicate that he had a Bank of America "Free Spirit" credit card. Plaintiff never applied for a Bank of America "Free Spirit" credit card and never received a Bank of America "Free Spirit" credit card.

26. The statement indicated that the account had a balance of $81.80 and that $79.00 of the balance was attributable to an annual fee, while the remainder was interest.

27. Upon investigation, Plaintiff determined that the $79.00 annual fee had been charged in March 2023, one year after the account had been opened.

28. After receiving the statement, Plaintiff became concerned that it might be a scam or that his identify had been stolen. He contacted Bank of America via its toll-free number and

explained to the Bank of America representative that he did not recognize this account, did not open this account, and had never received a physical credit card for this account. The Bank of America representative did not seem surprised that a person listed as the account holder had no knowledge of the account. She indicated that Bank of America would close the account and remove the charges.

29. On July 6, 2023, Bank of America reported to a credit bureau that the account's payment status was "60-89 Days Late."

30. On or about July 10, 2023, Plaintiff received a statement for a Bank of America "Free Spirit" credit card for the period June 5 – July 4, 2023. The statement indicated that the account had a previous balance of $81.80 and a new interest charge of $1.42, for a total balance of $83.22.

31. Plaintiff again contacted Bank of America at its toll-free number. The Bank of America representative stated that Plaintiff still owed the balance on the account, despite the representations of the first Bank of America representative that the account would be closed. This Bank of America representative suggested that Plaintiff take care of this now, which Plaintiff interpreted as a suggestion that he pay the charge. Plaintiff subsequently paid Bank of America $83.22 via an automated telephone payment system.

32. On July 13, 2023, Plaintiff reviewed his credit score on Credit Karma.[2] The website reported that the Bank of America account was closed on July 4, 2023, and that the account "has become 60 Days Late."

---

[2] Credit Karma, https://www.creditkarma.com/ (last visited July 13, 2023).

33. Plaintiff's credit score was lowered as a result of this card being issued to him, the payments that Bank of America reported as being late even though they should never have been owed, and/or the closure of the account.

34. Plaintiff has thus suffered an ascertainable loss of at least $83.22 in addition to the damage to his credit score.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this lawsuit pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed classes:

   a) All persons in Tennessee for whom Bank of America or a Bank of America employee submitted an application for and issued a credit card without that person's knowledge or consent (the "Tennessee Class").

   b) All persons in the United States for whom Bank of America or a Bank of America employee submitted an application for and issued a credit card without that person's knowledge or consent (the "National Class").

36. If additional information is obtained through further investigation and discovery, the foregoing definitions may be expanded or narrowed by amendment or amended complaint.

37. Specifically excluded from the Classes are (i) Defendants; (ii) Defendants' officers, directors, agents, trustees, representatives, employees, principals, servants, partners, and joint-venturers; (iii) any entities controlled by Defendants; (iv) Defendants' heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants, their officers, or their directors; and (v) the judge assigned to this action and any member of that judge's immediate family.

38. *Ascertainability*. Members of the Classes are ascertainable because the Classes are defined using objective criteria, such as geography and the fact of application for and issuance of a credit card. In addition, Bank of America retains records of individual accounts that have been opened. When settling with the CFPB, Bank of America agreed that it could use data analytics and

other techniques to identify individuals to whom credit cards had been issued without their knowledge or consent.[3]

39. ***Numerosity***. The Classes are so numerous that individual joinder is impracticable. Given the size of Bank of America and the size of the civil penalty that it paid to CFPB, it can be inferred that there are a large number of individual class members.

40. ***Commonality***. Common questions of law and fact exist and predominate over questions affecting only individual members of the Classes. Such questions include:

    a. Whether Bank of America issued credit cards to consumers without their knowledge or consent;

    b. Whether Bank of America accessed consumers' credit reports during the process of applying for credit cards without consumers' knowledge or consent;

    c. Whether Bank of America had any permissible purpose for accessing consumers' credit reports during the process of applying for credit cards without consumers' knowledge or consent;

    d. Whether accessing a consumer's credit report for purposes of an application for a credit card negatively impacts that consumer's credit rating;

    e. Whether Bank of America's sales quota policies encouraged employees to apply for and issue credit cards to consumers without their knowledge or consent;

    f. Whether the benefits obtained by Bank of America employees from Bank of America as a result of applying for and obtaining credit cards without the employees' knowledge or consent constitute an unlawful economic benefit;

    g. Whether Bank of America earned fees on credits cards issued without consumers' knowledge or consent;

    h. Whether the fees obtained constitute an unlawful economic benefit to Bank of America;

    i. Whether Bank of America continues to consider employees' sales volume when making employment decisions;

    j. Whether Plaintiff and members of the Classes were charged fees associated with credit cards issued without their knowledge or consent;

---

[3] *See* Consent Order, *supra* note 1, at 19.

k. Whether issuing credit cards without consumers' knowledge or consent constitutes an unfair or deceptive trade practice;

l. Whether Bank of America acted wilfully or knowingly when issuing credit cards without consumers' knowledge or consent;

m. Whether the Bank of America credit cards issued without consumers' knowledge or consent constitute financial documents within the meaning of T.C.A. § 47-18-2102(5);

n. Whether issuing credit cards without consumers' knowledge or consent constitutes identify theft under T.C.A. § 47-18-2103;

o. Whether Bank of America employees engaged in unfair, deceptive, or misleading practices when applying for credit cards without consumers' knowledge of consent;

p. Whether credit cards issued by Bank of America contain a consumer's first and last name and the credit card number;

q. Whether Bank of America employees who apply for credit cards without consumers' knowledge or consent can access the credit card numbers issued to these consumers;

r. Whether Bank of America employees acted in good faith when applying for credit cards without consumers' knowledge or consent;

s. Whether Bank of America had a duty not to issue credit cards without consumers' knowledge or consent; and

t. Whether Bank of America was unjustly enriched by obtaining fees from Plaintiff and the members of the National Class.

41. *Typicality*. Plaintiff's claims are typical of those of the other members of the Class because he was issued a credit card without his knowledge or consent and charged a fee associated with that credit card. This is conduct in which Bank of America engaged in with respect to all members of the Classes.

42. *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel experienced in complex class actions and intends to vigorously prosecute this case on behalf of the Classes. Further, Plaintiff has no interests that are antagonistic to the Class.

43. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Each individual class member's damages are relatively small compared to the burden and expense required to litigate that class member's claims against Defendant. It would thus be impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.

44. Individualized litigation also risks inconsistent or contradictory judgments and increases the cost of legal resolution of this matter for all parties and for the court system. By contrast, the proposed class action presents far fewer management difficulties and offers the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### First Cause of Action
**Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.***
**(On behalf of Plaintiff and the Tennessee Class)**

45. Plaintiff, individually and on behalf of the Tennessee Class, incorporates the foregoing allegations as if fully set forth herein.

46. Defendants are "persons" under T.C.A. § 47-18-103(18).

47. By issuing credit cards to Plaintiff and the members of the Tennessee Class that had not been requested or applied for by the members of the class, Bank of America caused confusion and misunderstanding as to the source or sponsorship of the credit card services being provided. This constitutes an unfair or deceptive practice under T.C.A. § 47-18-104(b)(2).

48. As a result of a violation of T.C.A. § 47-18-104, Plaintiff and the members of the Tennessee Class were injured as described above. This injury constitutes an ascertainable loss

10

under T.C.A. § 47-18-2102 because the injuries arose from Bank of America's unfair, misleading, or deceptive acts or practices.

49. Plaintiff and the members of the Tennessee Class accordingly bring this action to recover their damages as well as to enjoin Bank of America from continuing to violate T.C.A. § 47-18-104.

50. Because Bank of America, via its employees, knew that it was issuing credit cards to persons that had not requested them, Bank of America acted wilfully or knowingly. Accordingly, treble damages should be awarded.

**Second Cause of Action**
**Tennessee Identity Theft Deterrence Act of 1999, T.C.A. § 47-18-2101, *et seq.***
**(On behalf of Plaintiff and the Tennessee Class)**

51. Plaintiff, individually and on behalf of the Tennessee Class, incorporate the foregoing allegations as if fully set forth herein.

52. The credit cards and their numbers issued to Plaintiff and the members of the Tennessee Class are financial documents within the meaning of T.C.A. § 47-18-2102(5).

53. Employees of Bank of America engaged in identity theft by obtaining, possessing, or using the credit cards issued to Plaintiff and members of the Tennessee Class for an unlawful economic benefit.

54. This benefit not only accrued to the employees of Bank of America, who were able to meet the sales quotas on which their jobs depended, but also to Bank of America, which was able to collect fees on those credit card accounts. Bank of America was not entitled to fees from consumers to whom credit cards were issued without their knowledge or consent.

55. On information and belief, employees of Bank of America engaged in unfair, deceptive, and misleading practices for the purpose of obtaining credit card numbers to be issued to Plaintiff and members of the Tennessee Class.

56. Because Plaintiff and the members of the Tennessee Class have suffered identify theft, ascertainable loss is presumed under T.C.A. § 47-18-2102(1).

57. As a result of a violation of § 47-18-2103, Plaintiff and the members of the Tennessee Class were injured as described above. Plaintiff and the members of the Tennessee Class accordingly bring this action to recover their damages as well as to enjoin Bank of America from continuing to violate § 47-18-2103.

58. Because Bank of America, via its employees, knew that it was issuing credit cards to persons that had not requested them, Bank of America acted wilfully or knowingly. Accordingly, treble damages should be awarded.

59. Pursuant to T.C.A. § 47-018-2104(a), a copy of this complaint is being provided to the Attorney General of the state of Tennessee.

### Third Cause of Action
### Breach of Security System, T.C.A. § 47-18-2107
### (On behalf of Plaintiff and the Tennessee Class)

60. Plaintiff, individually and on behalf of the Tennessee Class, incorporates the foregoing allegations as if fully set forth herein.

61. Defendants are "persons" under T.C.A. § 47-18-2102(8).

62. A credit card issued by Bank of America to a member of the Tennessee Class contained the class member's first and last name as well as the credit card number. On information and belief, employees of Bank of America, when issuing unauthorized credit cards to members of the Tennessee Class, obtained access to class members' names and credit card numbers. On information and belief, this access was sufficient to permit access to the credit card accounts created.

63. Bank of America conducts business in the state of Tennessee and owns computerized personal information of residents of the state of Tennessee, including the names and credit card numbers of members of the Tennessee Class.

64. Employees of Bank of America that issued credit cards to members of the Tennessee Class were unauthorized to acquire class members' names and credit card numbers under the circumstances alleged here because the employees obtained the information with the intent to use it for an unlawful purpose (i.e., issuing a credit card to a person who did not request one).

65. Employees of Bank of America did not act in good faith when acquiring this personal information. In fact, the employees were acquiring the information in the process of issuing credit cards that were not requested by members of the Tennessee Class with the result that class members were exposed to financial harm.

66. The acquisition of class members' names and credit card numbers by Bank of America employees materially compromised the security, confidentiality, and/or integrity of that information.

67. Because they were issued credit cards by Bank of America, Plaintiff and the members of the Tennessee Class are customers of Bank of America.

68. As a result of a violation of § 47-18-2107, Plaintiff and the members of the Tennessee Class were injured as described above. Plaintiff and the members of the Tennessee Class accordingly bring this action to recover their damages as well as to enjoin Bank of America from continuing to violate § 47-18-2107.

### Fourth Cause of Action
### Negligence
### (On behalf of Plaintiff and the National Class)

69. Plaintiff, individually and on behalf of the National Class, incorporates the foregoing allegations as if fully set forth herein.

70. Bank of America had a duty not to issue credit cards to consumers without their knowledge or consent. Bank of America also had a duty to adequately supervise its employees to ensure that they did not apply for credit cards for consumers without their knowledge or consent.

71. The existence of this duty is confirmed by the fact that the Truth in Lending Act provides that "[n]o credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642.

72. Bank of America breached these duties by issuing credit cards to Plaintiff and the members of the National Class without their knowledge or consent and by failing to supervise its employees to ensure that they did not apply for credit cards without the knowledge or consent of Plaintiff and the members of the National Class.

73. As a result of this breach, Plaintiff and the members of the National Class suffered damages in the form of charges made to those credit cards accounts and damage to their credit ratings, as described above.

### Fifth Cause of Action
### Unjust Enrichment
### (On behalf of Plaintiff and the National Class)

74. Plaintiff, individually and on behalf of the National Class, incorporates the foregoing allegations as if fully set forth herein.

75. Bank of America has unjustly benefited from the issuance of credit cards to Plaintiff and the members of the National Class without their knowledge or consent.

76. This enrichment took the form of fees and other charges resulting from the issuance of the Bank of America credit cards without consumers' knowledge or consent. Consumers would not have had to pay these charges or be penalized for not paying them had Bank of America not issued those cards.

77. Under principles of equity and good conscience, Bank of America should not be permitted to retain any money derived from the credit cards that were issued to Plaintiff and the members of the National Class without their knowledge or consent.

78. Being required to pay the charges or suffer damage to their credit scores works to the detriment of Plaintiff and the members of the National Class and so violates fundamental principles of justice, equity, and good conscience.

79. Because Plaintiff and the members of the National Class did not apply for the credit cards that were issued to them, no contract exists that would offer relief in this circumstance.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf all others similarly situated, prays for a judgment against Defendants as follows:

1. An order certifying the Classes as defined above, appointing Plaintiff as Class Representative, and appointing Burns Charest LLP, Cuneo Gilbert & LaDuca LLP, and Barrett Law Group, P.A. as Class Counsel;

2. Declaring that Defendants' actions, as alleged above, violate the Tennessee Consumer Protection Act, the Tennessee Identity Theft Deterrence Act, and T.C.A. § 47-18-2107;

3. Finding that Defendants' conduct was negligent and caused Defendants to be unjustly enriched at the expense of Plaintiff and the members of the National Class;

4. Awarding the Classes their actual damages;

5. Awarding the Tennessee Class treble damages for Defendants' violations of the Tennessee Consumer Protection Act and the Tennessee Identify Theft Deterrence Act;

6. Awarding injunctive and equitable relief pursuant to T.C.A. §§ 47-18-109(b), -2104(f), -2107(h) requiring Bank of America to cease issuing credit cards to persons who did not apply for them;

7. Awarding Plaintiff attorneys' fees and costs pursuant to T.C.A. §§ 47-18-109(e)(1), 47-18-2104(g);

8. Awarding prejudgment and post-judgment interest as provided by law; and

9. Awarding any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf all others similarly situated, hereby demands a jury trial on all issues so triable.

Dated: July 27, 2023

Respectfully submitted,

By: /s/ *Gary E. Brewer*
    Gary E. Brewer, Attorney for Plaintiffs
    TN BPR#: 000942

OF COUNSEL:

**BREWER AND TERRY, P.C.**
Attorneys at Law
1702 W. Andrew Johnson Hwy.
P.O. Box 2046
Morristown, TN 37816
(423) 587-2730

Katherine Barrett Riley (BPR No. 021155)
John W. ("Don") Barrett
David McMullan
Sterling Aldridge
**BARRETT LAW GROUP, PA**
P.O. Box 927
Lexington, MS 39095
Telephone: 662-834-2488
Fax: 662-834-2628
kbriley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
saldridge@barrettlawgroup.com
dbarrett@barrettlawgroup.com
(*pro hac vices* to be submitted)

Warren T. Burns
**BURNS CHAREST LLP**

900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
(*pro hac vice* to be submitted)

Korey A. Nelson
Amanda K. Klevorn
Patrick D. Murphree
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiaa 70115
Telephone: (504) 779-2845
knelson@burnscharest.com
aklevorn@burnscharest.com
pmurphree@burnscharest.com
(*pro hac vices* to be submitted)

Charles J. LaDuca
Alexandra Warren
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
charles@cuneolaw.com
awarren@cuneolaw.com
(*pro hac vices* to be submitted)

Michael Flannery
**CUNEO GILBERT & LADUCA, LLP**
Two CityPlace Drive
St. Louis, Missouri 63141
Washington, D.C. 20016
Telephone: (314) 226-1015
mflannery@cuneolaw.com
(*pro hac vice* to be submitted)

*Counsel for Plaintiff and the Proposed Class*